**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>U.S. Department of Justice<br>Antitrust Division<br>450 Fifth Street, NW, Suite 8700<br>Washington, DC  20530,<br>          *Plaintiff*,<br><br>          v.<br><br>SMITHS GROUP PLC<br>4th Floor<br>11-12 St. James Square<br>London, SW1Y 4LB,<br>United Kingdom,<br><br>SAFRAN S.A.<br>2, boulevard du General-Martial-Valin<br>Paris Cedex 15<br>75724, France,<br><br>MORPHO DETECTION, LLC<br>7151 Gateway Boulevard<br>Newark, CA 94560,   and<br><br>MORPHO DETECTION INTERNATIONAL, LLC<br>2201 W. Royal Lane<br>Suite 150<br>Irving, Texas 75063,<br><br>          *Defendants*. | CASE NO. |

## **COMPLAINT**

The United States of America ("United States"), acting under the direction of the Attorney General of the United States, brings this civil antitrust action to enjoin the proposed acquisition of the global explosive detection business of Morpho Detection, LLC and Morpho

Detection International, LLC (collectively "Morpho") from Safran S.A. by Smiths Group plc ("Smiths") and to obtain other equitable relief. The United States alleges as follows:

## I. NATURE OF THE ACTION

1. Smiths proposes to acquire Morpho, a California-based wholly owned subsidiary of Safran S.A. Smiths and Morpho are two of the three leading providers of desktop explosive trace detection ("ETD") devices and related services in the United States. ETD devices are used to detect trace amounts of explosives or narcotics on persons or objects in airports and other high-risk critical infrastructure sites.

2. Smiths' acquisition of Morpho would eliminate competition between Smiths and Morpho for desktop ETD devices sold for passenger air travel or air cargo transport in the United States. The competition between Smiths and Morpho in the development, engineering, production, distribution, sales, and servicing of desktop ETD devices in the United States has benefitted customers. Smiths and Morpho compete directly on price, innovation, and quality of service. The proposed acquisition would give Smiths the ability and the incentive to raise prices or decrease the quality of service for desktop ETD devices sold for passenger air travel or air cargo transport to customers. The elimination of Morpho, an aggressive bidder and low-cost provider, would reduce Smiths' incentive to compete on price and service post merger. Further, because Morpho has actively worked to advance its ETD technology, it provides Smiths an incentive to innovate that will be lost as a result of this acquisition. As a result, the proposed acquisition likely would substantially lessen competition in the development, engineering, production, distribution, sale, and servicing of desktop ETD devices sold for passenger air travel

or air cargo transport in the United States, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## II. THE DEFENDANTS AND THE TRANSACTION

3. Defendant Smiths Group plc is a London-based corporation with a U.S. subsidiary, Smiths Detection U.S., Inc. ("Smiths Detection"), headquartered in Edgewood, Maryland. Smiths is a globally diversified technology company that designs, manufactures and delivers products for the healthcare, energy and petrochemicals, threat and contraband detection, and telecommunications industries. Smiths' subsidiary, Smiths Detection, develops, engineers, produces, sells, and services a wide range of threat and contraband detection technologies, including X-ray, ETD devices, and infrared spectroscopy used at airports, ports and borders, and in critical infrastructure worldwide. Smiths is also the dominant supplier of aftermarket parts and service for its ETD devices. In 2015, Smiths' worldwide revenues were approximately $4.5 billion. Smiths Detection's worldwide revenues were approximately $730 million and U.S. revenues were approximately $225.7 million.

4. Defendant Morpho, headquartered in Newark, California, is a division of Safran S.A. ("Safran"), a $17.3 billion aerospace and defense company based in Paris, France. Morpho focuses on the development, engineering, production, distribution, sale, and servicing of two categories of threat and contraband detection technologies and devices – computed tomography explosive detection systems and ETD devices – used at airports, air cargo facilities, and other high-risk critical infrastructure sites worldwide. Morpho is also the dominant supplier of aftermarket parts and service for its ETD devices. In 2015, Morpho's worldwide revenues were approximately $325 million, and its U.S. revenues were approximately $262 million.

5. Pursuant to an agreement dated April 20, 2016, Smiths intends to purchase Morpho's explosive detection system and ETD device businesses. The value of the transaction is approximately $710 million.

### III. JURISDICTION AND VENUE

6. The United States brings this action pursuant to Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

7. Defendants Smiths and Morpho develop, engineer, produce, distribute, sell, and service desktop ETD devices in the flow of interstate commerce. Defendants' activities in the development, engineering, production, distribution, sale, and servicing of desktop ETD devices substantially affect interstate commerce. The Court has subject matter jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

8. Defendants have consented to venue and personal jurisdiction in the District of Columbia. Venue is therefore proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(c).

### IV. TRADE AND COMMERCE

A. **Explosive Detection Industry Overview**

9. Equipment designed to detect and identify explosives is used across a broad spectrum of government agencies and private companies for security screening. This equipment includes ETD devices used at passenger checkpoints, visitor entry areas, or air cargo facilities

throughout the United States. ETD devices may be stationary ("desktop" ETDs) or mobile ("handheld" ETDs).

10. Desktop ETD devices are a secondary screening method. Secondary screening methods are employed after an alert is made by a primary screening device, such as an X-ray scanner or an explosive detection system. Desktop ETD devices detect trace amounts of explosive residue or other contraband on hands, belongings, and cargo from a tiny sample swabbed from the object and placed inside the detector.

11. Desktop ETD devices used at airport checkpoints and air cargo facilities need an external power source and a controlled environment, but are considered more reliable and accurate than handheld ETD devices, and are capable of greater throughput. Generally, an ETD device's operational performance is evaluated on sensitivity, selectivity or identification, and speed.

12. U.S. customers require desktop ETD vendors to have a local service network, with a ready supply of consumables and components. A local service presence allows vendors to provide training to new employees who operate their devices and provide timely repair and maintenance. Likewise, desktop ETDs require regular service, maintenance, and a ready supply of consumables, so having a local service presence enables vendors to respond expeditiously when a device requires attention, and reduces downtime that can slow the pace of passenger and baggage screening at airports and other critical facilities.

**B.     Desktop ETD Device Industry Regulation**

13. The Transportation Security Administration ("TSA") mandates separate security performance screening standards for desktop ETD devices used for passenger air travel and for

air cargo transport. Desktop ETD devices that meet the TSA threat certification standards are listed either on: (a) the Qualified Product List ("QPL") for desktop ETD devices purchased by the TSA for checkpoint screening of passengers, carry-on bags and hold baggage at airports; and/or (b) the Air Cargo Screening Technology List ("ACSTL"), for desktop ETD devices purchased by air cargo companies for screening of air cargo. In addition, desktop ETD devices purchased by the TSA for passenger air travel include customized software that is exclusively available to the TSA.

14. U.S. sales of desktop ETD devices to the TSA for passenger air travel depend upon a small number of large, infrequent TSA procurements that typically arise when the TSA updates its certification standards to meet emerging threats. Annual sales of desktop ETD devices used for passenger air travel in the United States averaged about $13 million over the last six years. Sales to air cargo companies follow a similar pattern, with large procurements occurring infrequently as air cargo carriers respond to evolving threats and new technology. Annual sales of desktop ETD devices used to screen air cargo averaged approximately $5.5 million over the last six years.

15. QPL qualification is a multi-step process that can take up to two years. Labs under the direction of the Department of Homeland Security test devices to ensure the necessary threats are detected. The TSA then conducts operational testing on-site at airports to confirm that its performance standards are met. If a desktop ETD device makes it through these steps, it will be qualified and placed on the QPL.

16. When the TSA opens a solicitation for desktop ETD devices, only vendors with desktop ETD devices on the QPL can participate. The TSA is currently conducting an expedited

evaluation of desktop ETD devices to be qualified for inclusion on the QPL, in anticipation of an upcoming procurement likely in the second half of 2017. The TSA does not publish the QPL, but does issue a press release when a contract is awarded, which identifies the name of the winning vendor and its desktop ETD device.

17. The ACSTL qualification process generally is the same as the qualification process for the QPL, but the mandated threat detection standards differ in order to account for a wider range of air cargo packaging material.

18. The current ACSTL threat detection standard expires in the next two years. The TSA has begun testing and qualifying new desktop ETD devices to meet a new ACSTL threat detection standard. Grandfathered devices may still be used by air cargo carriers until the expiration date, but any new purchases of such devices require a TSA waiver.

## V. RELEVANT MARKETS

19. The merger is likely to lead to a substantial lessening of competition for the sale of desktop ETD devices for two applications in the United States: passenger air travel and air cargo transport. Both desktop ETD device applications have unique customers with different technical and service requirements.

### A. Desktop ETD Devices for Passenger Air Travel in the United States

20. Desktop ETD devices for passenger air travel is a relevant product market. These devices are purchased exclusively by the TSA. The TSA may purchase only desktop ETD devices that are listed on the QPL, and QPL qualification requires that devices meet specific criteria and successfully complete rigorous testing. Further, as these devices may not be sold outside of the United States, the relevant geographic market is the United States. A hypothetical

profit-maximizing monopolist of desktop ETD devices sold for passenger air travel in the United States likely would impose a SSNIP that would not be defeated by substitution away from desktop ETD devices with QPL certification or by the TSA purchasing desktop ETD devices outside the United States. Accordingly, the development, engineering, production, distribution, sale, and servicing of desktop ETD devices sold for passenger air travel in the United States is a relevant market within the meaning of Section 7 of the Clayton Act.

      **B.**    <u>**Desktop ETD Devices for Air Cargo Transport in the United States**</u>

      21.    Desktop ETD devices used to screen air cargo is a relevant product market. Air cargo transport companies operating in the United States require that desktop ETD devices meet certain performance standards, which typically include ACSTL qualification by the TSA. Desktop ETD devices on the ACSTL must undergo significant, multi-step testing to ensure they meet and deliver the required technical standards and performance. As these devices are purchased for use at airports located in the United States, and because their sale involves a significant service component, the relevant geographic market is the United States. A hypothetical profit-maximizing monopolist of desktop ETD devices sold for air cargo transport in the United States likely would impose a SSNIP that would not be defeated by substitution away from desktop ETD devices in the relevant market or by air cargo companies purchasing the desktop ETD devices outside the United States. Accordingly, the development, engineering, production, distribution, sale, and servicing of desktop ETD devices for air cargo transport in the United States is a relevant product market within the meaning of Section 7 of the Clayton Act.

## VI. ANTICOMPETIVE EFFECTS OF THE PROPOSED TRANSACTION

22. Smiths' acquisition of Morpho would eliminate head-to-head competition between Smiths and Morpho in the development, engineering, production, distribution, sale, and servicing of desktop ETD devices for passenger air travel and air cargo transport in the United States. For their most significant customers, Smiths and Morpho are two of only three suppliers which historically have qualified to provide desktop ETD devices and related services for these two applications in the United States.

### A. Desktop ETD Devices for Passenger Air Travel in the United States

23. The TSA historically has qualified three suppliers to meet its QPL standards for desktop ETD devices for passenger air travel. Smiths and Morpho are two of those three suppliers and, in the past, the two companies have competed on price and other terms of sale. That competition has led to lower prices, better service, and more innovative products for the TSA.

24. In particular, Morpho has a history of bidding aggressively for contracts to supply and service desktop ETD devices in the passenger air travel market. By underbidding its rivals, Morpho delivered to the TSA a lower-priced option, while also incentivizing competitors to respond with more competitive prices and terms of sale. Absent the merger, Morpho is expected to continue to be an aggressive competitor. Accordingly, the proposed acquisition would give Smiths the ability and the incentive to raise prices and decrease the quality of its service.

25. The TSA is expected to issue a new solicitation to supply desktop ETD devices in the second half of 2017. Smiths and Morpho likely will continue to be two of only three competitors qualified to bid for this significant supply contract. The acquisition would reduce

from three to two the number of suppliers for the TSA's upcoming procurement, likely leading to higher prices and less advantageous terms for that agency.

26.  Smiths and Morpho each have sizable and active research and development operations and teams of engineers and technical staff working on desktop ETD devices for the passenger air travel market. Each firm has provided the other with the incentive to improve current products and develop new desktop ETD devices. A merged Smiths and Morpho would eliminate that competition depriving customers of more innovative future products and services.

27.  The proposed transaction, therefore, likely would substantially lessen competition in the development, engineering, production, distribution, sale, and servicing of desktop ETD devices in the passenger air travel market in the United States, lead to higher prices, decreased innovation, and poorer quality of service in violation of Section 7 of the Clayton Act.

### B. Desktop ETD Devices for Air Cargo Transport in the United States

28.  Smiths' acquisition of Morpho would eliminate head-to-head competition between Smiths and Morpho in the development, engineering, production, distribution, sale, and servicing of desktop ETD devices for the air cargo transport market in the United States. Smiths and Morpho are two of only three suppliers which are qualified to provide desktop ETD devices and a local service network.

29.  As in the passenger air transport market, Morpho has a history of bidding aggressively for contracts to supply and service desktop ETD devices in the air cargo transport market, which is likely to result in lower bids from Morpho and its rivals once new ACSTL solicitations are announced in the next two years. The proposed acquisition would, therefore,

give Smiths the ability and the incentive to raise prices and decrease the quality of its service for air cargo transport customers.

30. The sizable research and development operations, engineers, and technical staff of Smiths and Morpho, respectively, which work on desktop ETD devices for the passenger air travel market, also work to improve and develop new desktop ETD devices for the air cargo transport market. Each firm has provided the other with the incentive to improve current products and develop new desktop ETD devices for the air cargo transport market. A merged Smiths and Morpho would eliminate that incentive, potentially depriving customers of more innovative future products and services.

31. The proposed transaction, therefore, likely would substantially lessen competition in the development, engineering, production, distribution, sale, and servicing of desktop ETD devices in the air cargo transport market in the United States, lead to higher prices, decreased innovation, and poorer quality of service in violation of Section 7 of the Clayton Act.

## VII. DIFFICULTY OF ENTRY

32. Entry into the development, engineering, production, distribution, sale, and servicing of desktop ETD devices in the United States is difficult, and unlikely to be timely or sufficient to prevent the harm to competition caused by the elimination of Morpho as an independent supplier.

### A. Desktop ETD Devices for Passenger Air Travel in the United States

33. Firms attempting to enter into the development, engineering, production, distribution, sale, and servicing of desktop ETD devices in the passenger air travel market face substantial entry barriers in terms of time and technology. The TSA process for qualification of

a new desktop ETD device normally takes from 12 to 24 months. Testing includes multiple steps, each of which must be passed to proceed: (1) submission and corresponding review of a data package; (2) two rounds of functional testing of the unit in a controlled environment; and (3) operational testing of the unit on-site at an airport. As a result of these barriers, entry would not be timely, likely, or sufficient to defeat a price increase arising from the substantial lessening of competition that likely would result from Smiths' acquisition of Morpho.

### B. Desktop ETD Devices for Air Cargo Transport in the United States

34. Firms attempting to enter into the development, engineering, production, distribution, sale, and servicing of desktop ETD devices in the air cargo transport market likewise face substantial entry barriers in terms of time and technology. Air cargo companies typically require desktop ETD device providers to meet ACSTL standards, which demand an investment of time and money similar to that required under the TSA's QPL-testing process. Setting up a local network of service and training personnel and equipment is likewise a cost- and time-intensive endeavor. As a result of these barriers, entry would not be timely, likely, or sufficient to defeat a price increase arising from the substantial lessening of competition from Smiths' acquisition of Morpho.

### VIII. VIOLATION ALLEGED

35. The acquisition of Morpho by Smiths likely would substantially lessen competition in the market for the development, engineering, production, distribution, sale, and servicing of desktop ETD devices sold for passenger air travel or air cargo transport in the United States in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

36.  Unless enjoined, the transaction likely would have the following anticompetitive effects, among others:

   a. actual and potential competition between Smiths and Morpho in the market for the development, engineering, production, distribution, sale, and servicing of desktop ETD devices sold for passenger air travel or air cargo transport in the United States would be eliminated;

   b. competition generally in the market for the development, engineering, production, distribution, sale, and servicing of desktop ETD devices sold for passenger air travel or air cargo transport in the United States would be substantially lessened;

   c. prices for desktop ETD devices in the United States likely would be less favorable, and innovation and quality of service relating to desktop ETD devices sold for passenger air travel or air cargo transport in the United States likely would decline.

## IX.  REQUESTED RELIEF

37.  The United States requests that this Court:

   a. adjudge and decree Smiths' proposed acquisition of Morpho to be unlawful and in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18;

   b. preliminarily and permanently enjoin and restrain defendants and all persons acting on their behalf from consummating the proposed acquisition of Morpho by Smiths from entering into or carrying out any contract, agreement, plan, or understanding, the effect of which would be to combine Morpho with the operations of Smiths;

   c. award the United States its costs of this action; and

d.  award the United States such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA

_____
Brent C. Snyder
Acting Assistant Attorney General

_____
Patricia A. Brink
Director of Civil Enforcement

Dated: March 30, 2017

_____
Maribeth Petrizzi
Chief, Litigation II Section
D.C. Bar #435204

_____
Stephanie A. Fleming
Assistant Chief, Litigation II Section

_____
Leslie D. Peritz
Erin C. Grace
Attorneys
U.S. Department of Justice
Antitrust Division, Litigation II Section
450 Fifth Street, NW, Suite 8700
Washington, DC 20530
Tel.: (202) 616-2313
Fax: (202) 514-9033
Email: leslie.peritz@usdoj.gov