**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>v.<br><br>SMITHS GROUP PLC,<br><br>SAFRAN S.A.,<br>MORPHO DETECTION, LLC, and<br>MORPHO DETECTION INTERNATIONAL,<br>LLC,<br><br>        *Defendants*. | 17-cv-580 (RMC) |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on March 30, 2017, the United States and defendants, Smiths Group plc, Safran S.A., Morpho Detection, LLC, and Morpho Detection International, LLC (collectively, "defendants"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by the defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make a certain divestiture for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestiture required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of this action and over each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. DEFINITIONS

As used in this Final Judgment:

A.   "Acquirer" means the entity to which defendants divest the Divestiture Assets.

B.   "Smiths" means defendant Smiths Group plc, a United Kingdom public liability company headquartered in London, England, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Safran" means defendant Safran S.A., a French corporation with its headquarters in Paris, France, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

D. "Morpho" means defendants Morpho Detection, LLC, a Delaware limited liability company with its headquarters in Newark, California, and Morpho Detection International LLC, a Delaware limited liability company with its headquarters in Irving, Texas, their respective successors and assigns, and their respective subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their respective directors, officers, managers, agents, and employees. Morpho is a wholly owned subsidiary of Safran.

E. "ETD devices" means explosive trace detection equipment, which is used to detect trace amounts of explosive residue on hands, belongings, or cargo or in the air after an alert is triggered from a primary screening device.

F. "Desktop ETD devices" means stationary ETD devices used for secondary screening of passengers and cargo traveling by air.

G. "Divestiture Assets" means Morpho's global explosive trace detection ("ETD") business including, but not limited to:

    (1) Morpho's leases or subleases to the following facilities:

        (a) Morpho's R&D, manufacturing, sales, and service facility located at 23 Frontage Road, Andover, Massachusetts 01810 ("Andover facility");

      (b) Morpho's ETD device R&D facility located at 1251 East Dyer Avenue, Suite 140, Santa Ana, California 92705 ("Santa Ana facility");

      (c) Morpho's sales and service depot located at Granary House, Station Road, Great Shelford, Cambridge, England CB22 5LR;

      (d) Morpho's service depot located at 1585 Britannia Road East, Unit B3, Mississauga, Ontario L4W 2M4, Canada; and

      (e) Morpho's service depot located at 7-9 Orion Road, Unit 1, Lane Cove NSW 2066, Australia.

  (2) All tangible assets used in connection with Morpho's global ETD business, including, but not limited to, all research and development assets; all manufacturing equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including service contracts, service subcontracts, and supply agreements or contracts; all customer lists, customer records, contracts, accounts, and credit records; all repair and performance records and all other records; and

  (3) All intangible assets used in connection with Morpho's global ETD business, including, but not limited to, all patents, licenses and sublicenses, intellectual property (including the ionization process technology, the high-volume particle vapor sampling technology, and the mass spectrometry technology), copyrights, trademarks and trade names

(excluding trademarks and trade names related to the words "Morpho" or "Morpho Detection"), service marks, service names, technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, customization and design of new algorithms, engineering specifications, specifications for materials, specifications for parts and components, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information defendants provide to their own employees, customers, suppliers, agents or licensees, and all research data relating to Morpho's global ETD business, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

H.  "Transaction" means Smiths' proposed acquisition of Morpho's explosive detection systems and ETD device businesses.

### III. APPLICABILITY

A.  This Final Judgment applies to Smiths, Safran, and Morpho, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.  If, prior to complying with Sections IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

## IV. DIVESTITURE

A.      Defendants are ordered and directed, within ninety (90) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances.  Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In accomplishing the divestiture ordered by this Final Judgment, defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets.  Defendants shall inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.  Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privileges or work-product doctrine.  Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

C.      Defendants shall provide the Acquirer and the United States information relating to the personnel involved in the development, engineering, production, distribution, sale, or servicing of Morpho ETD devices to enable the Acquirer to make offers of employment.

6

Defendants will not interfere with any negotiations by the Acquirer to employ any defendant employee whose primary responsibility is the development, engineering, production, distribution, sale, or servicing of Morpho ETD devices.

    D.    Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of Morpho's global ETD business; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

    E.    For the defendants' employees who elect employment by the Acquirer, defendants shall waive all non-compete agreements and all non-disclosure agreements, vest all unvested pension and other equity rights, and provide all benefits to which the defendants' employees would generally be provided if transferred to a buyer of an ongoing business. For a period of twelve (12) months after the Acquirer has hired the defendants' employees, the defendants shall not solicit to hire, or hire any employee hired by the Acquirer, unless (1) such individual is terminated or laid off by the Acquirer, or (2) the Acquirer agrees in writing that defendants may solicit or hire that individual.

    F.    Defendants shall warrant to the Acquirer that each asset will be operational on the date of sale.

    G.    Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

    H.    At the option of the Acquirer, defendants shall enter into a transition services agreement with the Acquirer sufficient to meet the Acquirer's needs for assistance in matters

relating to the development, engineering, production, distribution, sale, or servicing of Morpho ETD devices. The Acquirer may exercise this option for a period no longer than twelve (12) months following completion of the divesture required by this Final Judgment

I.   Defendants shall warrant to the Acquirer that there are no material defects in the environmental, zoning or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

J.   By no later than thirty (30) days after the date the Transaction is closed, Smiths shall remove all of the PhotoMate-related and Quadrupole-related employees and equipment located at the Santa Ana facility.

K.   By no later than thirty (30) days after the Transaction is closed, Smiths shall remove all of the Source ID-related and Raman Spectroscopy-related employees and equipment located at the Andover facility.

L.   At the option of Smiths, the Acquirer shall enter into an agreement to provide Smiths with a non-exclusive, worldwide, royalty-free, non-transferable, irrevocable license for the intangible assets described in Paragraph II(G)(3), that, prior to the filing of the Complaint in this matter, were related to the development, engineering, production, distribution, sale and/or service of ETD devices (i.e., the ionization process technology, the high-volume particle vapor sampling technology, and the mass spectrometry technology); provided, however, that any license for ionization process technology and mass spectrometry technology may not be used in connection with the development, engineering, production, distribution, sale and/or service of

ETD devices. Such licenses will not be subject to any requirement to grant back to the defendants any improvement or modifications made to these assets.

  M. Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by Divestiture Trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business in the development, engineering, production, distribution, sale, and servicing of Desktop ETD devices. The divestiture, whether pursuant to Section IV or V of this Final Judgment:

  (1) shall be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the development, engineering, production, distribution, sale, and servicing of Desktop ETD devices; and

  (2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and defendants give defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. APPOINTMENT OF DIVESTITURE TRUSTEE

  A. If defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

  B. After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets. The Divestiture Trustee

9

shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, and V of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Paragraph V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture. Any such investment bankers, attorneys, or other agents shall serve on such terms and conditions as the United States approves including confidentiality requirements and conflict of interest certifications.

   C.   Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objections by defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section V.

   D.   The Divestiture Trustee shall serve at the cost and expense of defendants pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications. The Divestiture Trustee shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's accounting, including fees for its services yet unpaid and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the Divestiture Trustee and any professionals and

agents retained by the Divestiture Trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount. If the Divestiture Trustee and defendants are unable to reach agreement on the Divestiture Trustee's or any agent's or consultant's compensation or other terms and conditions of engagement within fourteen (14) calendar days of appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court. The Divestiture Trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to defendants and the United States.

      E.      Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture. The Divestiture Trustee and any consultants, accountants, attorneys, and other agents retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

      F.      After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain

information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G. If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Divestiture Trustee's recommendations. To the extent such reports contains information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H. If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Divestiture Trustee.

## VI. NOTICE OF PROPOSED DIVESTITURE

A. Within two (2) business days following execution of a definitive divestiture agreement, defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the Divestiture Trustee is responsible, it shall similarly notify defendants. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B. Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Paragraph V(C) of this Final Judgment.

13

Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or V shall not be consummated. Upon objection by defendants under Paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. FINANCING

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. HOLD SEPARATE

Until the divestiture required by this Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. AFFIDAVITS

A.   Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, defendants shall deliver to the United States an affidavit as to the fact and manner of their compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendants have taken

to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.   Within twenty (20) calendar days of the filing of the Complaint in this matter, defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after the change is implemented.

C.   Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestiture has been completed.

## X. COMPLIANCE INSPECTION

A.   For the purposes of determining or securing compliance with this Final Judgment, or of any related orders such as any Hold Separate Order, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

    (1)    access during defendants' office hours to inspect and copy, or at the option of the United States, to require defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of defendants, relating to any matters contained in this Final Judgment; and

    (2)    to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal

Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. NOTIFICATION

A.   Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), during the term of this Final Judgment, Smiths, without providing advance notification to the Antitrust Division, shall not directly or indirectly acquire any assets of or any interest, including, but not limited to, any financial, security, loan, equity, or management interest, in any entity engaged in the development, engineering, production, distribution, sales, and servicing of Desktop ETD devices in the United States; provided that notification pursuant to this Section shall not be required where the purchase price of the assets or interest being acquired is less than $30 million.

B.   Such notification shall be provided to the Antitrust Division in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 9 of the instructions must be provided only about desktop ETD devices thereof described in Section IV of the Complaint filed in this matter. Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the

names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction. If within the thirty-day period after notification, representatives of the Antitrust Division make a written request for additional information, Smiths shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting all such additional information. Early termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder. This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XII. NO REACQUISITION

Defendants may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIII. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV. EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XV. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: 23 June 2017

Court approval subject to procedures of Antitrust
Procedures and Penalties Act, 15 U.S.C. § 16

_____
United States District Judge